FILED '09 MAR 30 10:53 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLARENCE M. TROTTER,                                08-CV-3083-TC

        Plaintiff,                              OPINION AND
                                                    ORDER
v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

COFFIN, Magistrate Judge:

## Background

Plaintiff Clarence Trotter ("Trotter") brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security income under Title XVI of the Social Security Act. This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Page 1 - OPINION AND ORDER

Trotter was born on November 26, 1964. Tr. 383. He has completed a GED. Tr. 380. His most recent work experience includes work as a bindery machine feeder, mill worker, and landscaper. Tr. 120, 344. Trotter alleges disability beginning on August 21, 2001, as a result of bipolar disorder and affective schizophrenia. Tr. 87.

Trotter's claim was denied initially and upon reconsideration. Tr. 48-52, 53-55. Following two hearings in September 2004 and January 2005, the ALJ issued an unfavorable decision on April 29, 2005. Tr. 17-24. On February 1, 2006, the Appeals Council denied Trotter's request for review and remand of the ALJ's decision. Tr. 6-9.

After Trotter timely filed a complaint for judicial review, this court reversed and remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). Trotter v. Astrue, No. 06-CV-3019-TC, slip op. at 11 (D. Or. April 23, 2007). This court directed the ALJ to contact Dr. Brad Kauder, Psy.D., ("Dr. Kauder") to address any work capabilities or limitations related to mental health issues. Id. Once the ALJ evaluated the new information received from Dr. Kauder, the court directed the ALJ to reevaluate the step four findings and, "in light of any additional information obtained, [to] consider reevaluating lay witness testimony and [the] weight given to the opinions of the various physicians." Id. The Appeals Council vacated the final decision of the Commissioner

Page 2 - OPINION AND ORDER

and remanded the case to an ALJ for further proceedings consistent with the order of this court. Tr. 361.[1]

Following a hearing, the ALJ issued a second unfavorable decision on April 14, 2008. Tr. 336-46. Pursuant to 20 C.F.R. § 416.1484(d), the ALJ's decision became the final decision of the Commissioner. On appeal to this court, Trotter contends that the ALJ erred when it recontacted Dr. Kauder in a manner inconsistent with the remand orders by this court and the Appeals Council.[2]

## Disability Analysis

The ALJ applied the five-step disability determination procedure described in 20 C.F.R. § 416.920. See Bowen v. Yuckert, 482 U.S. 137, 141-42 (1987).

At step one, the ALJ found that Trotter had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. Tr. 338; see § 416.920(b).

At step two, the ALJ found that Trotter had the following severe impairments: schizophrenia, history of polysubstance abuse, and mild degenerative disc disease. Tr. 339; see § 416.920(c).

---

[1] Trotter filed a subsequent claim for Title XVI benefits on March 23, 2006. Tr. 361. Because the remand of the original claim renders the subsequent claim duplicative, the Appeals Council ordered the ALJ to associate the claim files and issue a new decision on the associated claims. Tr. 361.

[2] The parties have consented to jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 631(c)(1).

Page 3 - OPINION AND ORDER

step three, the ALJ determined that Trotter did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in Appendix 1. Tr. 17; see § 416.920(d).

The ALJ concluded that Trotter had a residual functional capacity ("RFC") to perform medium work, but he is limited to no or very minimal public contact and simple, one to three-step, and sequence tasks. Tr. 339; see §§ 416.920(e), 416.967.

At step four, the ALJ concluded that Trotter was able to perform past relevant work as a bindery machine feeder, mill worker, and landscaper. Tr. 22; see § 416.920(f).

At step five, the ALJ concluded that, in addition to being able to perform past relevant work, Trotter was able to perform jobs that exist in significant numbers in the national economy. Tr. 22; see § 416.920(g).

## Standard of Review

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(a)(1)(A), 1382c(a)(3)(A). The

Page 4 - OPINION AND ORDER

burden shifts only when the Commissioner must show a significant number of jobs exist that the claimant can do. Bowen, 482 U.S. at 141-42.

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Id. In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing S.S.R. 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)); Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).

The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence can

Page 5 - OPINION AND ORDER

reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. Robbins, 466 F.3d at 882; Batson, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

I.  Medical Evidence

A.  Dr. Kauder

The ALJ erred by failing to follow this court's instructions to have Dr. Kauder address any work capabilities or limitations related to claimant's mental health issues. An agency's failure to follow a court's remand order is legal error subject to reversal. Sullivan v. Hudson, 490 U.S. 877, 885-86.

Moreover, the ALJ has a duty to develop the record when ambiguities arise. Mayes v. Massinari, 276 F.3d 453, 459-60 (9th Cir. 2001). The Code of Federal Regulations provides that:

> Recontacting medical sources. When evidence we receive from your treating physician or psychologist or other medical source is inadequate for use to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical

> source contains a conflict or ambiguity that must be resolved . . . . We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source . . . .

20 C.F.R. § 416.912(e).

On initial consideration of Trotter's claim, the ALJ explained that, although Dr. Kauder assigned a Global Assessment of Functioning ("GAF") of 40-45, his examination revealed that Trotter was alert and fully oriented and that some variations existed in Trotter's self-report. Tr. 21. The ALJ noted that "[i]n spite of the low GAF, Dr. Kauder opined that the claimant is capable of working in limited environments, such as his summer job as a ticket taker, or in [jobs that require] written expression." Tr. 21 (citation omitted).

After reviewing the Commissioner's initial determination concerning that claim, this court held that "Dr. Kauder should be contacted to specifically address any work capabilities or limitations related to mental health issues." Trotter, No. 06-CV-3019-TC, slip op. at 10-11. This court explained:

> There is ambiguity as to whether Trotter's mental impairments precluded him from sustaining jobs for more than a few months at a time. Dr. Dempsey did not feel capable of addressing any work capabilities or limitations related to Trotter's mental health issues and stated that Dr. Kauder would be in a much better position to address the issues. Dr. Kauder indicated earlier that Trotter could function outside his home for "relatively short periods."

Id. at 10. This court noted that the record established that Trotter worked short-term jobs between 1984 and 2002, but that, as

Page 7 - OPINION AND ORDER

the Ninth Circuit has stated, "substantial gainful activity means more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time. Trotter, No. 06-CV-3019-TC, slip op. at 8 (citing Gatliff v. Comm'r of the Soc. Sec. Admin., 172 F.3d 690, 692-94 (9th Cir. 1999)). This court concluded that there exist significant questions as to whether Trotter's past job experiences are past relevant work that can support the ALJ's step four finding. Accordingly, this court held that remand for further proceedings was appropriate. Trotter, No. 06-CV-3019-TC, slip op. at 8-9.

On remand, the ALJ sent a letter to Dr. Kauder asking him the following questions: (1) whether he had any professional dealings with Trotter other than the initial examination; (2) whether he performed any additional examinations of Trotter; and (3) "[i]f you are able, can you specifically address any work related limitations you feel are applicable and indicate what time frame you are referring to . . . ." Tr. 546. Dr. Kauder responded by letter to the ALJ stating that: (1) other than the initial examination, he had not had any further professional dealing with Trotter, including examinations; and (2) that "with the data I have available, . . . I am not able to provide any additional information about [Trotter's] work-related limitations." Tr. 545.

Upon receipt of the letter, the ALJ took no further action to develop the record concerning Dr. Kauder's opinion.

The ALJ's reconsideration of the record underlying Trotter's claim also did nothing to clarify Dr. Kauder's opinion. The ALJ maintained that Dr. Kauder's opinion supported the conclusion that Trotter has an RFC to perform medium work. Tr. 342. The ALJ noted that, to the extent that Dr. Kauder's opinion is inconsistent with the RFC assigned to Trotter, it is given less weight because it was based on a one-time examination and because of inconsistencies in Trotter's reports. Tr. 342. As the ALJ did when initially reviewing Trotter's claim, he noted Dr. Kauder's observation that, in contrast to Trotter's self-report, Trotter was alert and fully oriented, exhibited no evidence of hallucinations, and demonstrated intact attention, concentration, and memory. Tr. 342. Based on that observation, the ALJ reaffirmed his conclusion that, despite the fact that Dr. Kauder has assigned a GAF of 40-45 to Trotter, he believed that Trotter would be "able to function in limited work environments such as his most recent job as a ticket taker." Tr. 342.

Once Dr. Kauder indicated that he was not able to provide any additional information regarding Trotter's work-related limitations, the ALJ erred by failing to take additional steps consistent with § 416.912(e) to resolve the ambiguity as to whether Trotter's mental impairments precluded him from sustaining jobs for

Page 9 - OPINION AND ORDER

more than a few months at a time. Where an ambiguity in the medical record exists, the ALJ should seek additional evidence or clarification from the medical source. § 416.912(e)(1). Although the ALJ sought additional information concerning Trotter's work-related limitations, he did not seek clarification concerning Dr. Kauder's opinion that Trotter could function outside of the home for "relatively short periods." See Tr. 546.

Because the ALJ's effort to obtain additional information did not result in a clarification of Dr. Kauder's opinion, the ALJ should have taken additional steps to clarify the ambiguity in Dr. Kauder's opinion. Such steps may have included: (1) recontacting Dr. Kauder seeking clarification of his opinion; (2) requesting a new report from Dr. Kauder; (3) requesting a more detailed report; or (4) telephoning Dr. Kauder. § 416.912(e)(1). If these steps were unavailing, the ALJ may have asked Trotter to attend one or more consultative examinations. § 416.912(f).[3]

Accordingly, the ALJ erred by failing to follow this court's direction to address ambiguities in the record with regard to Dr. Kauder's opinion and its relationship to the question of whether

---

[3] This court acknowledges that the ALJ has broad discretion in deciding when to order a consultative examination. Reed v. Massanari, 270, F.3d 838, 842 (9th Cir. 2001). Indeed, a consultative examination may not be necessary in this case if the ALJ is able to clarify Dr. Kauder's opinion by following one of the steps enumerated in § 416.912(e)(1). However, the ALJ may err by failing to order a consultative examination where he is unable to obtain additional information or clarification of the medical record. § 416.912(f).

Page 10 - OPINION AND ORDER

Trotter's mental impairments precluded him from sustaining jobs for a significant period of time. See Gatliff, 172 F.3d at 694. The ALJ further erred by failing to develop the record consistent with § 416.912.

B. Dr. Shields

The Commissioner argues that the opinion of Dr. Thomas Shields, Ph.D., ("Dr. Shields") included in the updated record, supports the ALJ's conclusion that Trotter is able to perform medium work except with additional limitations. However, a review of Dr. Shields's opinion does nothing to clarify the question of whether Trotter's mental impairments precluded him from sustaining jobs for a significant period of time. Nor does the Dr. Shields's consultative examination reveal any information that is useful in clarifying Dr. Kauder's opinion.

Dr. Shields premised his opinion on the fact that it is based on information "obtained under restricted conditions and through limited observation, which may limit its reliability and validity." Tr. 499. Dr. Shields noted that Trotter's credibility appeared somewhat questionable. Tr. 499. However, Dr. Shields opined that "the most reasonable diagnostic inference is schizophrenia, residual type – an impression based on his history of psychotic disturbance as well as recent attenuated positive symptom of schizophrenia . . . and some bizarre characteristics about his

Page 11 - OPINION AND ORDER

behavior . . . ." Tr. 499. However, he was unable to clarify the issue regarding multiple personality disorder. Tr. 499. With regard to Trotter's ability to work with others, Dr. Shields opined that "[a]t a glance, there does not appear to be any significant cognitive reason why this gentleman could not adapt to a manual labor position at this time." Tr. 499. However, Dr. Shields recommended further neurological testing to more adequately assess this area of Trotter's functioning. Tr. 499.

At best, Dr. Shields's opinion serves to support this court's determination that the record should be further developed to clarify Trotter's ability to sustain jobs for a significant period of time. Like Dr. Kauder's opinion, Dr. Shields's opinion is based on a limited evaluation of Trotter and reveals conflicting evidence wherein Trotter's credibility is called into question but mental impairment cannot be ruled out. Dr. Shields himself acknowledged that further evaluation of Trotter was needed to fully develop a diagnosis. Tr. 499. Accordingly, Dr. Shields's opinion does not support the Commissioner's argument that the ALJ fully developed the record on remand with regard to Trotter's ability to sustain jobs for a significant period of time.

III. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the

Page 12 - OPINION AND ORDER

court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Harman, 211 F.3d at 1178 (citing Smolen, 80 F.3d at 1292).

Under the circumstances of this case, remand is appropriate because the ALJ must fully develop the record with regard to Trotter's ability to sustain jobs for a significant period of time. Even if this court were to accept the fact that Dr. Kauder did not have any additional information, the ALJ has a responsibility to take additional steps consistent with § 416.912(e) to fully develop the record. This conclusion is further supported by Dr. Shields's observation that further evaluation is needed to accurately

Page 13 - OPINION AND ORDER

determine whether Trotter is able to sustain jobs for significant periods of time. Thus, remand for further consideration is appropriate.

## Conclusion

For the above reasons, this Court REVERSES the decision of the Commissioner and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with the foregoing opinion. Specifically, the ALJ shall: (1) recontact Dr. Kauder to clarify his opinion concerning Trotter's work capabilities and limitations related to mental health issues; (2) as necessary, take additional steps consistent with § 416.912 to further develop the record concerning Trotter's abilities to sustain jobs for significant periods of time; (3) in light of any new information, reevaluate lay witness testimony and the weight given to the opinions of the various physicians; and (4) reevaluate the step four and five findings as necessary.

DATED this 30th day of March 2009.

_____
Thomas Coffin
United States Magistrate Judge